THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TROY D. CALHOUN, Defendant-Appellant.

Third District   No. 3—86—0298

Opinion filed February 13, 1987.

Nancy Rink Carter, of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (Walter P. Hehner, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Troy D. Calhoun, was charged with the murder of his stepfather, Paul Engle, in violation of section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(2)). A

jury convicted Calhoun, and the court sentenced him to a term of 30 years' imprisonment. Calhoun contends that the evidence was insufficient to substantiate the charge of murder and that the offense should have been reduced to voluntary manslaughter. Calhoun asserts that the evidence was only sufficient to establish that the death of Engle was the result of serious provocation that arose during mutual combat. Alternatively, Calhoun asserts that the 30-year term of imprisonment was excessive and that it should be reduced to the minimum statutory term of 20 years.

There was no question that Calhoun inflicted the fatal wound which resulted in Engle's death. Rather, the issue was whether the circumstances were sufficient to find that Calhoun acted "under a sudden and intense passion resulting from serious provocation by *** the individual killed." The phrase "serious provocation" has been defined as "conduct sufficient to excite an intense passion in a reasonable person." (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a).) If the mutual quarrel or combat which occurred between Calhoun and Engle was only sufficient to support a finding of serious provocation, then Calhoun's conviction of murder must be reduced to voluntary manslaughter. See *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451.

Calhoun was living with his mother, Sandra Engle, and the decedent, his stepfather. On the day of Engle's death, Calhoun had gone to the house to resolve a situation between himself and his mother. After an argument, Calhoun's mother ordered him to move out of the house. Calhoun left but returned later after Engle had returned home. The two men talked in the kitchen awhile and then Engle also told Calhoun to leave the house. Engle followed Calhoun from the house calling him and his natural father sons of bitches and referring disparagingly to Calhoun's grandfather's suicide, which occurred when the defendant was a young boy living with his grandfather.

The two men walked down to a yard across the street from a local tavern and began to struggle. Witnesses viewing the fight also heard the exchange of violent words between the two men. Engle was on top of Calhoun. The men then separated and Calhoun walked about 10 feet away. Engle then yelled to him again and Calhoun went running back at Engle. This is when Calhoun inflicted the wound with a folding knife that he carried in a sheath on his belt. Both men had been drinking prior to the incident. Calhoun then got up and walked away. He was later arrested on the side of the road by law-enforcement officers.

At the jury instructions conference, Calhoun tendered a non-Illinois Pattern Jury Instruction (IPI) mutual-combat instruction which

stated that "mutual combat between the deceased and the defendant may constitute adequate provocation sufficient to reduce the acts of defendant to voluntary manslaughter." The State objected to the instruction, and the court refused to give it. After the jury had deliberated approximately four hours, it submitted two questions to the court for clarification. The questions were: (1) What constituted lawful justification to commit murder? and (2) What constituted serious provocation with regard to the definition of voluntary manslaughter? Both attorneys agreed that the jury had sufficient instruction as to the first question. Calhoun's attorney resubmitted the mutual-combat instruction to the court but it was again refused upon objection. The judge answered the jury's question by writing on the bottom of the paper upon which the questions were submitted that "[y]ou have received the instructions of law in this case. The terms will not be further defined." After about eight hours of deliberation, the jury returned a verdict of guilty on the charge of murder and not guilty to the charges of voluntary and involuntary manslaughter. The court then imposed a 30-year term of imprisonment.

■■ ■ The first issue raised asks us to review the evidence and determine whether the evidence requires us to reduce Calhoun's conviction from one of murder to one of voluntary manslaughter. Calhoun contends that the conviction for murder was erroneous because the evidence was sufficient only to show that he was guilty of voluntary manslaughter. A reviewing court is not free to overturn the judgment of the trier of fact unless the evidence fails to prove each element of the crime beyond a reasonable doubt. (*People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E.2d 203.) It is the jury's responsibility to resolve factual disputes, assess the credibility of witnesses, and determine the weight and sufficiency of the evidence. That determination will not be reversed unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the guilt of the defendant remains. (*People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369.) Case law further establishes that where a conviction has been reduced from murder to voluntary manslaughter in a mutual-combat setting, there was no pause in the activities of the participants, *i.e.*, there was no "cooling off period" for the "voice of reason to return." (See *People v. Johnson* (1972), 4 Ill. App. 3d 249, 252, 280 N.E.2d 764, 767 (and cases cited therein).) In this case, we will not substitute our review of the record for the judgment of the jury who viewed the witnesses and the evidence firsthand and who was in a better position to judge credibility and weight. We will not rule as a matter of law that Calhoun's conviction should be reduced to voluntary manslaughter where the evidence

was sufficient to justify a conviction for murder. There was evidence of provocation on the part of Engle but the evidence also tended to negate the claim that the provocation was the cause of his conduct.

■■ ■ The next issue we must address is whether it was error, in the first instance, to refuse to give Calhoun's mutual-combat instruction to the jury. Calhoun cites *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451; *People v. Ellison* (1984), 126 Ill. App. 3d 985, 466 N.E.2d 1024; *People v. Land* (1975), 34 Ill. App. 3d 548, 340 N.E.2d 44; and *People v. Harmon* (1968), 104 Ill. App. 2d 294, 244 N.E.2d 358, as support for the proposition that once evidence is presented to show a mutual-combat situation, such an instruction is required. However, there is nothing in those cases, or in any other cases found by this court, to substantiate such a belief. The cases suggest that if mutual combat is presented as a factor, then a voluntary-manslaughter instruction should be presented to the jury.

There is no question that mutual quarrel or combat is sufficient to support a finding of serious provocation in determining whether an accused has committed murder or the lesser offense of voluntary manslaughter. (See *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451.) It is also well established that an accused is entitled to have the jury instructed on his theory of the case and that his right extends to non-IPI instructions. (*People v. Ellison* (1984), 126 Ill. App. 3d 985, 466 N.E.2d 1024.) However, the jury was fully instructed as to the law in this case when it was given the IPI instruction on voluntary manslaughter. The instruction clearly states the elements of the offense and the definition of serious provocation. The Illinois Pattern Jury Instruction for Criminal Cases specifically states that voluntary manslaughter occurs when, "at the time of the killing [the accused] acts under a sudden and intense passion resulting from serious provocation by [the deceased]. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." (Illinois Pattern Jury Instruction, Criminal, No. 7.03 (2d ed. 1981).) We also note that Calhoun's tendered instruction was neither neutral nor did it add anything which would clarify the IPI instruction. Therefore, we conclude that the trial court was correct in refusing to give Calhoun's mutual-combat instruction.

■■ ■ Calhoun asserts next that even if the court was correct in refusing to give the instruction initially, it should have been given when the jury submitted its questions to the court. This court has stated previously that a trial court should make every effort to clear up any confusion in the minds of the jurors. The jury determination is the final, critical stage in any trial, and it is necessary that the jury

has a full and complete understanding of the law. Without further instructions to clarify a jury misconception, verdicts would be rendered under a misunderstanding or misapprehension of the law or facts. (*Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386, 328 N.E.2d 344.) However, it is also well established that it is not an abuse of discretion when the trial court declines to answer a jury's inquiries where the given jury instructions are readily understandable and sufficiently explain the relevant law. (*People v. Palmer* (1982), 111 Ill. App. 3d 800, 444 N.E.2d 678.) There is always a danger that, had the court answered the jury inquiry by giving it the additional instruction, the jury may have construed it as the court's opinion on the evidence. (See, *e.g., People v. Tostado* (1981), 92 Ill. App. 3d 837, 416 N.E.2d 353.) In light of our conclusion that there were sufficient and understandable instructions given to the jury, we further hold that the trial court did not abuse its discretion by answering the jury's inquiries as it did or by again refusing to give the mutual-combat instruction.

■ The final issue for our consideration is Calhoun's sentence. Calhoun prays that, even if the murder conviction is affirmed, his sentence should be reduced to the statutory minimum of 20 years. This court should not substitute its judgment or preferences as to punishment for that of the sentencing court. The trial court is ordinarily best suited to tailor the sentence or other disposition to the needs of the case. It will balance the appropriate factors in imposing a sentence, and its exercise of discretion should not be altered on review absent abuse of that discretion. (*People v. Steppan* (1985), 105 Ill. 2d 310, 473 N.E.2d 1300.) In this case, the trial court had the advantage of a complete presentence investigation and report. A presentence investigation disclosed that Calhoun had no prior convictions. His employment record showed him to be a hard worker and honest. The report also disclosed a seven-year history of drug and alcohol use. A psychiatric report diagnosed Calhoun as an antisocial personality with a good potential for rehabilitation. The Unified Code of Corrections provides that the sentence for murder shall be from 20 to 40 years (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)), and we find no abuse of discretion by the trial court in imposing the 30-year term of imprisonment.

For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

SCOTT, P.J., and BARRY, J., concur.